IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BURT A. SMITH, # 25379-380, )
)
           Plaintiff, )
)
vs. ) Case No. 18-cv-146-JPG
)
LESLEE BROOKS, )
DELIGHT GRISWOLD, )
S. MAY, )
and UNITED STATES of AMERICA, )
)
           Defendants. )

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

      Plaintiff, an inmate in the United States Penitentiary in Marion, Illinois, brings this *pro se* action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He additionally seeks relief under the Federal Tort Claims Act ("FTCA") for medical negligence. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

      Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

      An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers

1

to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

On April 20, 2017, Plaintiff underwent surgery to remove a cyst from his right vas deferens. (Doc. 1, p. 8). After returning to Marion, Plaintiff saw Griswold for follow-up care. Griswold refused to provide Plaintiff with any pain medication other than Ibuprofen and ice packs, despite Plaintiff's complaints of severe pain, and his reports to Griswold that Ibuprofen and ice had not been effective. (Doc. 1, p. 8).

2

Plaintiff was given a 5-day pass to be absent from work as he recovered from surgery. However, on April 24, 2017 (approximately 2 days early), Plaintiff was put back on the work schedule and threatened with disciplinary action if he refused to work. Griswold refused to renew Plaintiff's pass to be excused from his prison job. (Doc. 1, p. 8).

Approximately one week post-surgery, Plaintiff's testicle was swollen to the size of a handball, and was severely painful. Ice and Ibuprofen provided no relief, and unnamed Marion health care staff took no action to help him. (Doc. 1, p. 9). On May 2, 2017, Griswold checked Plaintiff's sutures, concluding that they were "fine" and the swelling was "normal." *Id.* Griswold refused to change Plaintiff's pain medication.

On May 12, 2017, Plaintiff again consulted Griswold because the swelling and pain had not improved. A male nurse (McGhee) examined Plaintiff's testicle, which was still swollen to "enormous" size, but Griswold did nothing to provide him with any relief. *Id.*

Between May 12 and June 22, 2017, Plaintiff tried to sign up to be seen by a health care provider at sick call, but May refused to see him or allow him to sign up for sick call. (Doc. 1, pp. 9-10). At some point, McGhee again examined Plaintiff and noted that his testicle appeared to have healed abnormally, adhering to his scrotum. (Doc. 1, p. 10). Plaintiff continued, verbally and via emails, to inform multiple health care staff members about the pain and swelling, but no other treatment was provided. Even though Plaintiff continued to use Ibuprofen and ice packs, his pain and swelling were so severe that he could barely walk, could not work, and could not sleep at night.

On June 23, 2017, the Health Services Administrator referred Plaintiff to see the doctor. (Doc. 1, p. 10). This appointment did not occur until June 30, 2017; during the interim Brooks refused to allow Plaintiff to go to sick call. *Id.*

On June 30, 2017, Dr. Pass diagnosed Plaintiff with a probable post-surgical infection. (Doc. 1, pp. 10-11). Dr. Pass (who is not a Defendant) prescribed antibiotics and requested a urologist consultation for Plaintiff, but he did not give Plaintiff any pain medication.

Plaintiff continued to complain to health providers that the Ibuprofen and ice packs were not relieving his pain or swelling. Griswold told him that nothing more would be done to treat him. (Doc. 1, p. 11).

On August 4, 2017, Plaintiff saw the urologist, who prescribed a 3-week course of antibiotics (Bactrim). This began to relieve the swelling. On August 17, 2017, Griswold finally prescribed a different pain medication (Meloxicam) for Plaintiff, but refused to examine the swollen testicle. *Id.*

On September 13, 2017, an ultrasound confirmed that Plaintiff had hyperemic granulation, where his testicle and scrotum had improperly healed together. (Doc. 1, p. 11).

On September 18, May refused to see Plaintiff when he sought assistance through sick call. That same day, Plaintiff was prescribed a 2-week course of antibiotics, but Health Services ran out of his medication after only 11 days; he had to wait for 2 days to get a refill. (Doc. 1, pp. 11-12).

On October 12, 2017, Brooks refused to see Plaintiff for sick call. (Doc. 1, p. 11). He continued to complain of pain because neither the Ibuprofen nor the Meloxicam gave him relief. Plaintiff was not given any different medication until November 30, 2017, when he got Naproxen. (Doc. 1, p. 12).

Over 2 months after the ultrasound test (on November 17, 2017), Plaintiff saw a surgeon, who determined that Plaintiff's testicle was attached to his scrotum. (Doc. 1, p. 12). A second surgery was performed on December 21, 2017, to correct the problem. Following that surgery,

Marion staff provided much different and better care for Plaintiff, including giving him antibiotics, pain medication, multiple follow-up visits, and dressing changes. (Doc. 1, p. 12). Plaintiff notes that this occurred after he filed his tort claim.

On December 24, 2017, Plaintiff sought help from May to change his surgical dressing, which was "visibly dirty and had dried blood on it." (Doc. 1, p. 13). May refused to change the dressing. Brooks then instructed Health Services to provide care for Plaintiff. *Id.*

Plaintiff asserts that Griswold, Brooks, and May were deliberately indifferent to his serious medical needs. (Doc. 1, p. 13). Further, his treatment by Marion medical staff amounted to negligence in violation of the Federal Tort Claims Act. (Doc. 1, p. 14). He attaches his "Final Denial of Claim" letter for the tort claim, dated November 27, 2017. (Doc. 1, p. 16). Plaintiff seeks monetary damages. (Doc. 1, p. 14-15).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Brooks, Griswold, and May, for denying and delaying treatment for Plaintiff's post-surgical swelling, infection, and severe pain;
>
> **Count 2:** Medical negligence claim against the United States of America under the Federal Tort Claims Act, for the actions of its employees at the USP-Marion, Illinois, who failed to provide proper treatment and adequate follow-up care for Plaintiff's post-surgical swelling and severe pain.

Count 1 shall proceed for further consideration against the individual Defendants. Count

2 shall be dismissed at this time without prejudice, for failure to state a claim upon which relief may be granted. However, Count 2 may be reinstated if Plaintiff timely files the required affidavit and certificate(s) of merit pursuant to Illinois law.

### Count 1 – Deliberate Indifference to Serious Medical Needs

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff suffered from pain and swelling for many months following his first surgery, which was severe enough to interfere with his ability to walk, sleep, and engage in

normal activities.  He was ultimately diagnosed with a complication that required a second surgery to correct.  The Complaint thus satisfies the objective component of an Eighth Amendment claim.  The remaining question is whether Plaintiff's prison medical providers acted or failed to act with deliberate indifference to a known risk of serious harm.

Plaintiff sought treatment from Griswold on several occasions.  She refused to extend his pass to be excused from work in late April 2017, despite his severe symptoms.  From approximately April 20 to August 17, 2017, Griswold consistently refused to provide Plaintiff with any other medication for pain relief, despite his repeated complaints that Ibuprofen and ice packs were ineffective.  As a result, Plaintiff claims, he continued to suffer unrelieved pain and was unable to engage in normal activity for a number of months.  At this stage, these allegations support a deliberate indifference claim against Griswold that may proceed for further consideration in Count 1.

May refused to see Plaintiff when he sought treatment, and did not allow him to sign up for sick call between May 12 and June 22, 2017, when he was suffering from pain and swelling.  May again refused to see him on September 13, 2017.  Finally, after his second surgery, May refused to change Plaintiff's surgical dressing on December 24, 2017.  Based on these events, May could be found to have been deliberately indifferent to Plaintiff's medical condition, and the claim in Count 1 shall also proceed against her.

Similarly, Brooks refused to allow Plaintiff to go to sick call for a period between June 23 and June 30, 2017, after his condition had been deemed serious enough to require a doctor's appointment.  Again on October 12, 2017, Brooks refused to see Plaintiff at sick call when he sought relief for his pain.  These actions may also support a deliberate indifference claim.

**Count 1** shall therefore proceed against Brooks, Griswold, and May.

**Dismissal of Count 2 – Federal Tort Claim for Medical Negligence**

Cases brought under the FTCA are governed by the substantive law of the place where the alleged acts or omissions constituting negligence occurred. *See* 28 U.S.C. §§ 1346(b), 2674; *Richards v. United States*, 369 U.S. 1, 10 (1962); *Bowen v. United States*, 570 F.2d 1311, 1315-16 (7th Cir. 1978). Therefore, Illinois state law applies to Plaintiff's medical negligence claim arising from the events described in the Complaint.

Where a plaintiff sues the United States for the medical negligence or malpractice of its employees in Illinois, the applicable Illinois statute requires the plaintiff to file an affidavit along with the Complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a).[1] This is a substantive requirement of Illinois law. *See Hahn v. Walsh*, 762 F.3d 617, 629-33 (7th Cir. 2014) (diversity jurisdiction context), *cert. denied*, 135 S. Ct.

---

[1] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010. *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety). After *Lebron*, the previous version of the statute continued in effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010). The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section. *See* notes on validity of 735 ILL. COMP. STAT. §5/2-622 (West 2013).

1419 (2015); *Murphy v. United States*, Case No. 08-cv-745-JPG-DGW, 2010 WL 3310258 (S.D. Ill. Aug. 19, 2010) (FTCA context). Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614.

In this case, Plaintiff acknowledges his obligation to file the required affidavit and report/certificate of merit from a qualified health professional pursuant to §5/2-622(a). However, he has not filed these documents. He has requested this Court to recruit counsel for him, and asserts that without the assistance of an attorney, he does not have the ability to procure the necessary certificate of merit. (Doc. 1, p. 13; Doc. 3).

Because Plaintiff has not complied with §5/2-622(a), the Court must dismiss the FTCA claim in **Count 2** against the United States. However, the dismissal shall be without prejudice at this time, and based on Plaintiff's motion (Doc. 3), the Court shall recruit counsel for him.

### Recruitment of Counsel

There is no constitutional or statutory right to appointment of counsel in a civil case, although the Court may, in its discretion, appoint counsel to represent indigent civil litigants. *Santiago v. Walls*, 599 F.3d 749, 760-761 (7th Cir. 2010); *see also Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992); 28 U.S.C. § 1915(d). 28 U.S.C. § 1915(e)(1) anticipates that the Court may request an attorney to represent a person, in order to ensure the orderly prosecution of litigation in the district. *Pruitt v. Mote*, 503 F.3d 647, 653-54 (7th Cir. 2007) (a court has discretion to recruit counsel, and lawyers have "obligations to their calling") (citing *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989)). In recognition of the burden such an assignment imposes upon the practicing bar, the Local Rules provide that such a

request will not be made more than once during a twelve-month period and/or within 2 years of an attorney's last panel appointment. SDIL-LR 83.1(i); 83.8(b).

In considering whether to recruit counsel, the Court must inquire whether, "given the difficulty of the case, [does] the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel [make] a difference in the outcome?" *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993); *Greeno v. Daley*, 414 F.3d 645, 658(7th Cir. 2005); *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007). The Court of Appeals for the Seventh Circuit clarified in *Santiago v. Walls* that the relevant inquiry is whether, in light of the totality of the circumstances, the difficulty of the case exceeds the particular plaintiff's capacity as a layperson to coherently litigate the case pretrial and at trial. *Santiago*, 599 F.3d at 762-764.

Plaintiff has already been deemed indigent (Doc. 8). His reasonable efforts to secure attorney representation on his own have been unsuccessful. (*see* Doc. 3). Although Plaintiff has amply demonstrated that he can articulate his claims, present relevant legal arguments and reasonably comply with the procedural intricacies of litigation, the medical issues in this particular case, the interests of judicial economy and the swift resolution of this action all weigh in favor of appointing counsel to represent Plaintiff. In particular, it is apparent that without the assistance of counsel, Plaintiff will likely be unable to comply with the affidavit and certificate of merit requirements of 735 ILL. COMP. STAT. §5/2-622(a). Therefore, Plaintiff's motion (Doc. 3) is **GRANTED**, and a member of the district court bar has been randomly selected from the 2018 Pro Bono Panel through the CM-ECF system for assignment to represent Plaintiff Smith in this action.

**IT IS HEREBY ORDERED** that, for the reasons stated, and in accordance with 28 U.S.C. § 1915(e)(1) and Local Rule(s) 83.1(i) and 83.9(b), attorney Jane M. McFetridge of

Jackson Lewis P.C., 150 N. Michigan Ave., Ste. 2500, Chicago, IL 60601, is **ASSIGNED** to represent Plaintiff in this civil rights case. On or before March 28, 2018 (14 days from the date of this Order), assigned counsel shall enter her appearance in this case. Attorney McFetridge is free to share responsibilities with an associate who is also admitted to practice in this district court. Assigned counsel, however, must enter the case and shall make first contact with Plaintiff, explaining that an associate may also be working on the case. Plaintiff should wait for his attorney to contact him in order to allow counsel an opportunity to review the court file.

The Clerk of Court is **DIRECTED** to transmit this Order and copies of the docket sheet and the Complaint (Doc. 1) to attorney McFetridge. The electronic case file is available through the CM-ECF system.

Now that counsel has been assigned, Plaintiff <u>shall not</u> personally file anything in this case, except a pleading that asks that he be allowed to have counsel withdraw from representation. If counsel is allowed to withdraw at the request of Plaintiff, there is no guarantee the Court will appoint other counsel to represent Plaintiff.

As to the reinstatement of Plaintiff's dismissed Federal Tort Claim in **Count 2** of this action, if Counsel determines that a motion to reinstate the claim will be consistent with her obligations under Federal Rule of Civil Procedure 11, Counsel **SHALL SUBMIT** such a motion along with Plaintiff's required affidavit regarding consultation with a qualified health professional, no later than **60 days** from the date of this Order. The professional's certificate of merit must also be timely filed within the requirements of 735 ILL. COMP. STAT. §5/2-622(a). Should Plaintiff fail to timely file the required affidavit or certificate, the dismissal of **Count 2** may become a dismissal **with prejudice**. *See* FED. R. CIV. P. 41(b).

**IT IS FURTHER ORDERED** that, within **60 days** of the date of this Order, Plaintiff, by and through counsel, shall file an amended complaint, if counsel deems amendment appropriate. An amended complaint will undergo preliminary review. If an amended pleading is not filed, the case shall proceed on the present Complaint.

**IT IS FURTHER ORDERED** that all pending motions filed by Plaintiff *pro se* are **DENIED** without prejudice so that assigned counsel can evaluate how to proceed.

Plaintiff is cautioned to consult with his counsel in this matter and to understand that it is assigned counsel who is the legal professional in this relationship. Without commenting on the validity of the matter in litigation, counsel is reminded and Plaintiff is advised that counsel, even though appointed by the Court, has an obligation under the rules to refrain from filing frivolous pleadings. As a consequence, counsel will likely, from time to time, advise Plaintiff against taking a certain course of action. While Plaintiff may not totally agree with counsel's advice, he should realize that, in the long run, such advice will be in his best interest because it is in compliance with the law. Also, counsel may advise Plaintiff to pursue additional claims or to abandon certain existing claims.

Counsel, of course, maintains an ethical obligation to fully and vigorously represent her client, but only to the extent that it does not impede her ethical obligation to follow the rules of the Court and the law. If Plaintiff wants to be represented by counsel, he will have to cooperate fully with counsel.

Counsel is **ADVISED** to consult Local Rules 83.8-83.14 regarding *pro bono* case procedures.

Plaintiff and his counsel are **ADVISED** that, because Plaintiff is proceeding *in forma pauperis*, if there is a monetary recovery in this case (either by verdict or settlement), any unpaid

out-of-pocket costs must be paid from the proceeds. *See* SDIL-LR 3.1(c)(1). If there is no recovery in the case (or the costs exceed any recovery), the Court has the discretion to reimburse expenses.

Section 2.6 of this Court's Plan for the Administration of the District Court Fund provides for a degree of reimbursement of *pro bono* counsel's out-of-pocket expenses, as funds are available. The Plan can be found on the Court's website, as well as the form motion for out-of-pocket expenses and an Authorization/Certification for Reimbursement. Any motion for reimbursement must be made within 30 days from the entry of judgment, or reimbursement will be waived. *See* SDIL-LR 83.13. The funds available for this purpose are limited, however, and counsel should use the utmost care when incurring out-of-pocket costs. In no event will funds be reimbursed if the expenditure is found to be without a proper basis. The Court has no authority to pay attorney's fees in this case. No portion of a partial filing fee assessed pursuant to 28 U.S.C. § 1915 will be reimbursed. Assigned counsel may move for an exemption from PACER fees for this case.

The district court has entered into an agreement with attorney James P. Chapman and the Illinois Institute for Community Law to consult with lawyers on issues in these cases, including substantive and procedural questions (both legal and practical) and dealing with the client. Mr. Chapman can be reached by phone at (312) 593-6998 or email at JamesPChapman@aol.com. His services are available to counsel free of charge, as long as counsel is representing a prisoner *pro bono* on a case in the district. Counsel is also encouraged to view online lectures presented by Mr. Chapman at www.illinoislegaladvocate.org (under "Legal Resources" then "Prisoners' Rights"). In addition, the Court's website, www.ilsd.uscourts.gov, includes a "Guide for Attorneys Recruited to Represent Plaintiffs in Section 1983 Cases" which is available to counsel

as a resource. It is listed under "Rules & Forms" – "For Attorneys" on the website. The Court encourages counsel to consult it and Mr. Chapman as needed.

As of this date, Plaintiff's contact information is:

**BURT A. SMITH, No. 25379-380**
**U.S. PENITENTIARY – MARION**
**P.O. BOX 1000**
**MARION, IL 62959**

### Disposition

**COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted, because Plaintiff has not filed the required affidavit pursuant to 735 ILL. COMP. STAT. §5/2-622(a). Defendant **UNITED STATES of AMERICA** is **DISMISSED** from this action without prejudice.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on **BROOKS, GRISWOLD, and MAY**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **BROOKS, GRISWOLD, and MAY** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[2] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the

---

[2] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 14, 2018**

s/J. Phil Gilbert  
United States District Judge